UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**DARRELL L. MILES**                                                                 **PLAINTIFF**

**v.**                                                                 **CIVIL ACTION NO. 3:18-CV-P116-CRS**

**SETH MITCHELL** *et al.*                                                       **DEFENDANTS**

**MEMORANDUM OPINION**

This matter is before the Court on initial review of Plaintiff Darrell L. Miles' *pro se* complaint (DN 1) pursuant to 28 U.S.C. § 1915A. For the reasons that follow, the instant action will be dismissed.

**I. STATEMENT OF CLAIMS**

Plaintiff is a convicted prisoner currently incarcerated at the Kentucky State Penitentiary (KSP). He brings his action under 42 U.S.C. § 1983 and sues the following Defendants: (1) KSP Sgt. Seth Mitchell, PREA (Prison Rape Elimination Act) investigator; (2) KSP Adjustment Chairman William B. Morrison; (3) KSP Sr. Capt. Will Thomas; (4) Green River Correctional Complex (GRCC) Lt. Holly L. Rickard; (5) GRCC Adjustment Officer Charles E. Basting; (6) Dr. Kevin Younger, employed as Medical Care Provider at GRCC and contracted through Correct Care Solutions, L.L.C. (CCS); (7) Brenda Beehler, RN, Nurse Executive and Health Care Grievance Committee Member at CCS; (8) Dawn Patterson, RN, Health Service Administrator and Health Care Grievance Committee Member at CCS; (9) Christy L. Jolly, Administrative Specialist II and Health Care Grievance Committee Member at CCS; (10) Denise Burnett, APRN, Health Care Grievance Committee Member at CCS; (11) GRCC Capt. Angela Hampton; (12) GRCC "CUA II Grievance Coordinator" Darrell Wheeler; and (13) Kentucky State Reformatory (KSR) Medical Provider Jeff Ingram. Plaintiff sues Defendants Mitchell,

Morrison, Thomas, Rickard, Basting, Dr. Younger, Hampton, and Wheeler in their individual capacities; sues Defendants Beehler, Patterson, Jolly, and Burnett in both their individual and official capacities; and sues Defendant Ingram in his official capacity.

Plaintiff begins his statement of claims as follows:

> Since the discovery in 2014 at Northpoint . . . that I snore with my mouth open. I realize I have some cronic breathing issues when I sleep from Asthma or some other form of nasal infection or disease etc. that is in the most extreme and severe state once I fall asleep. "This Condition has Cause me to be sodomized in my sleep at different institutions," on multiple occassions and not awaken while being touched. It is so extreme for a man to wake up in prison with a cronic medical condition or illness, be denied medical treatment because the officials have a dislike for the person complaining. . . . The most degradeing and emotional mind state a straight man can go through in prison. Wakeing up and finding his rectum disfigured and dischargeing with someone's bodily fluids. [] from a predator who intentionally forced himself on me in my sleep.

Plaintiff describes events occurring at both KSP[1] and GRCC.[2] Plaintiff sues three KSP Defendants – Defendants Mitchell, Morrison, and Thomas. Plaintiff alleges that Defendant Mitchell, a KSP PREA investigator, violated his Fourteenth Amendment due process rights during the investigation of several PREA claims by Plaintiff and subsequent disciplinary proceedings. He claims that Defendant "Mitchell is the original Kentucky Dept. of Corrections staff member who is responsible for starting a practice of violating statewide policy . . . . Then falsifing documents in the plaintiff file to Continue punishing him for filing lawsuits against other K.D.O.C. official at Northpoint Training Center." Plaintiff alleges as follows:

> While housed [at KSP], [he] was put in risk to being Raped on multiple occasion as punishment for filing lawsuits. Having a illness and knowing he will not awaken and when done place feces in his mouth while rolling him

---

[1] While Plaintiff is currently incarcerated at KSP, the allegations in the instant complaint pertain to his prior detention at KSP in 2016.
[2] Plaintiff sues Jeff Ingram, a "Medical Care Provider" at KSR, but he fails to allege any facts involving Defendant Ingram or about his detention at KSR.

> over on his back to let it roll down to the throat. "was a cruel and intentional act of Hate."
>
> [] The culprit then go outside the Cell, close the door then use something to reach plaintiff until he wakes up to swollow the feces (poop) choking until it goes down enough to breath again. Then the trapped substances causes the ears to ache and cause trouble swollowing.

In attached Extraordinary Occurrence Reports and Disciplinary Reports, Plaintiff claims on several occasions that he was sexually assaulted (for instance, on one occasion, Plaintiff alleged that he "woke up with his rectum wet and the liquid smelling musky") while he slept by either a guard or another inmate who he suspects must have been let into the cell. Plaintiff claims that Defendant Mitchell as the investigator lied about what he saw on the videotapes and falsified reports so that Plaintiff would be found guilty on disciplinary charges of lying. He also alleges that Defendant Mitchell lied to the Kentucky State Police and covered up a rape.

As to Defendant Morrison, Plaintiff claims that he violated the Due Process Clause when he, as the Chairman/Adjustment Committee Officer over several disciplinary actions against Plaintiff, "imposed excessive punishment." He claims that Defendant Morrison "made a Arbitrary decision to punish plaintiff with on one occassion forfeiture of fifteen (15) days of meritorious good time, and on another two fifteen (15) consecutive days in segregation."

According to Plaintiff, Defendant Thomas "was one of the top supervisors who conducted a review of the Disciplinary Action and the Extraordinary Occurrence Report . . . from P.R.E.A. reports being filed due to plaintiff's cell door being opened while he was sleep and him being raped." Plaintiff claims that when he repeatedly reported that his cell door was being opened, Defendant Thomas did not "check the status of the plaintiff's reports to ensure his safety." He also claims that "a liberty interest was created by the disciplinary action imposed on

the plaintiff from Arbitrary abuse of power when [Defendant] Thomas authorized plaintiff be disciplined for lying to an employee after being raped on multiple occassions."

Although unclear from the complaint, it appears that Plaintiff was transferred from KSP to GRCC around the end of 2016 or beginning of 2017. The allegations that follow pertain to his detention at GRCC.

Plaintiff claims that GRCC Defendant Dr. Younger was the medical provider that he was recommended to see "after being seen at U.K. Medical Center for an Endoscopy which revealed a fungus that was and has caused some medical issue still in existance." Plaintiff claims that he has "Joint Pain, Chest Pain, Trouble Swollowing, Blary Vision, Back pain in the Kidney area, swelling and foot pain in the feet and ankles, snoring with mouth open, Trouble breathing while sleep and rectum itch." He claims that after following sick call procedures, "[t]he only issue addressed was plaintiff feet that after doing exercises for Plantar fasciitis, the soreness still exist." He continues, "Another visit produced no results when the plaintiff rectum itch was irritating in which Dr. Younger refused treatment for and plaintiff later discover after being sent out by K.S.P. officials on accident for assault (sexually) 'Rape.' The sexual assault nurse examiner discovered a disease." Plaintiff asserts that Defendant Dr. Younger "failed to have a sleep study conducted or to have an infectious disease examination conducted to the claims of sexual assault [] and the medical request to treat anual itching and discharge." He claims that he requested a sleep study be reconducted due to the one he had at Northpoint Training Center "being a generic knock-off to such serious complaints." While not specific to Dr. Younger, Plaintiff additionally claims that a GRCC "official continued the practice of denying medical treatment to see a E.N.T (Ear, Nose & Throat) specialist as well."

4

Next, Plaintiff alleges that GRCC Defendants Beehler, Patterson, Jolly, and Burnett, who were "Health Care Grievance Committee Members during Administrative Review of the medical care request to address [Plaintiff's] throat," denied his medical grievance(s).

As to Defendant Rickard, Plaintiff claims that this GRCC PREA investigator failed to investigate his PREA claims but issued disciplinary reports against Plaintiff for lying instead. Plaintiff claims that Defendant Rickard "repeated the same statement [Defendant] Mitchell made when he issued his disciplinary report for lying" against KSP. He claims that she interfered with providing video evidence and failed to contact Kentucky State Police. He reports that one of the disciplinary actions against him was "later overturned" by GRCC Warden Hart.

Defendant Basting, a GRCC Chairman/Adjustment Officer, heard the write up against Plaintiff that was issued for tampering with physical evidence/hindering an investigation and found Plaintiff guilty. Plaintiff claims that Defendant Hampton "failed to correct the error by imposing the Disciplinary while refusing to allow the plaintiff to call the camera as a witness" and "refuse to allow Ky. State Police to investigate."

Finally, Plaintiff claims that he filed grievances in compliance with Corrections Policies and Procedures (CPP) and that Defendant Wheeler, the GRCC grievance coordinator, denied "all grievance that involve preserveing Criminal Conduct." He additionally claims that Defendant Wheeler denied grievances "to Cover up Rape and harrassment" in violation of PREA and that he violated the First Amendment "by denying a federally Protected Right to redress plaintiff's grievances with the Court and the Administrative body with the department of Corrections." Review of grievances attached to Plaintiff's complaint reveals that Defendant Wheeler rejected Plaintiff's grievances for various reasons.

5

As relief, Plaintiff seeks monetary and punitive damages and injunctive relief in the form of ordering "ENT Visit and Colonostomy" and "Release [] to get my own treatment."

## II. STANDARD OF REVIEW

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, the Court must review the complaint under 28 U.S.C. § 1915A. Under that statute, the Court must review the complaint and dismiss the complaint, or any portion of the complaint, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of

the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although courts are to hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519 (1972), this duty to be less stringent "does not require us to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require courts "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. <u>ANALYSIS</u>

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. Injunctive relief

A case, or portion thereof, becomes moot when events occur which resolve the controversy underlying it. *Burke v. Barnes*, 479 U.S. 361, 363 (1987). Generally, an inmate's release from prison or transfer to another prison moots his request for injunctive relief. *See Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (holding that a prisoner's claims for injunctive relief became moot after he was transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("[T]o the extent Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that searched his mail."). Because Plaintiff has been transferred to KSP, his request for injunctive relief, which he made while he was housed at KSR, will be dismissed.[3]

### B. Damages

#### 1. Official-capacity claims against CCS Defendants Beehler, Patterson, Jolly, Burnett, and Ingram

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). The official-capacity claims against the CCS Defendants are actually against their employer, CCS. *See, e.g.*, *Griffin v. S. Health Partners, Inc.*, No. 1:12CV-P174-M, 2013 WL 530841, at *5 (W.D. Ky. Feb. 11, 2013).

"It is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one

---

[3] Should Plaintiff allege a current denial of medical treatment at KSP, he may file a new § 1983 action against those individuals at KSP who he claims have denied/are denying him medical treatment at that institution.

acting 'under color of state law.'" *Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988)). For purposes of initial review, the Court presumes that CCS is a state actor. However, a private corporation, like CCS, "is not liable under § 1983 for torts committed by its employees when such liability is predicated solely upon a theory of respondeat superior." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999). Rather, like a municipality, a private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well."). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003).

In the instant case, Plaintiff has not alleged the existence of a policy or custom on the part of CCS that caused any deprivation of his constitutional rights. Thus, the claims against CCS Defendants Beehler, Patterson, Jolly, Burnett, and Ingram[4] will be dismissed because Plaintiff has failed to state a claim upon which relief will be granted.

---

[4] It is unclear whether Defendant Ingram, who Plaintiff designates as "Medical Care Provider at [KSR]," is an employee of CCS or KSR. To the extent that he is not an employee of CCS but of KSR, the claims for damages against him must still be dismissed because a state official sued in his official capacity for damages is not a "person" subject to suit under § 1983, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), and also is immune under the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. at 169.

### 2. Individual-capacity claims

#### a. Due process claims

Plaintiff alleges due process violations by KSP Defendants Mitchell, Morrison, and Thomas and GRCC Defendants Rickard, Basting, and Hampton for failure to properly investigate PREA reports, for failure to follow corrections policies and procedures, and/or for actions taken during disciplinary proceedings.

#### i. Failure to investigate PREA report

Plaintiff asserts that Defendants failed to properly investigate his allegations of sexual assault. However, a claim based on an inadequate investigation fails to state a constitutional violation because private citizens have no constitutional or federal statutory right to compel the investigation of another person. *See Diamond v. Charles*, 476 U.S. 54, 64-65 (1986); *Jacoby v. PREA Coordinator*, No. 517CV00053MHHTMP, 2017 WL 2962858, at *4 (N.D. Ala. Apr. 4, 2017) ("Whether an inadequate investigation, or the failure to investigate at all, no § 1983 liability is created."), *report and recommendation adopted*, 2017 WL 2957825 (N.D. Ala. July 11, 2017); *Browder v. Parker*, No. 5:11CV-P29-R, 2011 WL 2379406, at *7 (W.D. Ky. Jun. 15, 2011) ("Private citizens, whether or not they are incarcerated, have no constitutional or federal statutory right to compel the investigation of another person.") (citing *Diamond*, 476 U.S. at 64-65; *White v. City of Toledo*, 217 F. Supp. 2d 838, 841 (N.D. Ohio 2002)); *Walker v. Schmoke*, 962 F. Supp. 732, 733 (D. Md. 1997) ("[N]o federal appellate court, including the Supreme Court . . . has recognized that there is a federally enforceable right for the victim to have criminal charges investigated at all, let alone with vigor or competence.") (citation omitted). Accordingly, Plaintiff's claim that Defendants failed to properly investigate his allegations will be dismissed for failure to state a claim.

Further, although not addressed by the Sixth Circuit, district courts, including the Western District of Kentucky, have found that the PREA does not create a private cause of action which can be brought by an individual plaintiff. *See Simmons v. Solozano*, No. 3:14CV-P354-H, 2014 WL 4627278, at *4 (W.D. Ky. Sept. 16, 2014); *Montgomery v. Harper*, No. 5:14CV-P38-R, 2014 WL 4104163, at *3 (W.D. Ky. Aug. 19, 2014) ("[T]his Court concludes that the PREA creates no private right of action."); *Chapman v. Willis*, No. 7:12-CV-00389, 2013 WL 2322947, at *4 (W.D. Va. May 28, 2013) ("There is no basis in law for a private cause of action to enforce a PREA violation."); *Holloway v. Dep't of Corr.*, No. 3:11VCV1290 (VLB), 2013 WL 628648, at *2 (D. Conn. Feb. 20, 2013) ("There is nothing in the PREA that suggests that Congress intended it to create a private right of action for inmates to sue prison officials for non-compliance to the Act."); *Faz v. N. Kern State Prison*, No. CV-F-11-0610-LJO-JLT, 2011 WL 4565918, at *5 (E.D. Cal. Sept. 29, 2011) ("[T]he PREA does not create a private right of action . . . ."); *Woodstock v. Golder*, No. 10-CV-00348-ZLW-KLM, 2011 WL 1060566, at *9 (D. Colo. Feb. 7, 2011) ("PREA provides no private right of action.") (citation omitted). "The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue. The statute does not grant prisoners any specific rights." *Chinnici v. Edwards*, No. 1:07-cv-229, 2008 WL 3851294, at *3 (D. Vt. Aug. 12, 2008) (internal citation omitted). Upon consideration, this Court also concludes that the PREA creates no private right of action, and to the extent that Plaintiff may be attempting to bring a claim thereunder, such claim will be dismissed for failure to state a claim upon which relief may be granted.

### ii. Failure to follow corrections policies and procedures

Failure of prison officials to follow institutional procedures or policies does not give rise to a constitutional claim. *See Sandin v. Conner*, 515 U.S. at 481-82; *Smith v. City of Salem, Ohio*, 378 F.3d 566, 578 (6th Cir. 2004) ("[S]tate law, by itself, cannot be the basis for a federal constitutional violation."); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995) (rejecting inmate's argument that prison failed to follow Michigan prison regulations in putting him in segregation); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney v. Farley*, 501 F.3d 577, 580-81 (6th Cir. 2007). Accordingly, Plaintiff's claim that Defendants failed to follow corrections policies and procedures will be dismissed.

### iii. Disciplinary proceedings

To state a Fourteenth Amendment due-process claim, an inmate must allege a deprivation of a liberty interest protected by the Due Process Clause. To determine whether segregation of an inmate from the general prison population involves the deprivation of a protected liberty interest, the Court must determine if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483 (1995). Because there is no liberty interest in remaining free from disciplinary segregation, *id.* at 484, Plaintiff is not entitled to due process protections for such and has failed to state a due process claim.

Nonetheless, a restraint which "inevitably affect[s] the duration of [an inmate's] sentence" creates a liberty interest. *Sandin v. Conner*, 515 U.S. at 487. The loss of good-time

credits affects the length of Plaintiff's prison sentence; thus, he has a protected liberty interest in this regard. *Id.* at 477-78 (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)). However, there is still a barrier to his Fourteenth Amendment claim. A state prisoner may not file a § 1983 suit for damages or equitable relief challenging his conviction or sentence if a ruling on his claim would render the conviction or sentence invalid, until and unless the conviction or sentence has been reversed on direct appeal, expunged by Executive Order, declared invalid by a state tribunal, or has been called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). If a ruling on a claim would necessarily render the duration of Plaintiff's confinement invalid, the claim must be dismissed because it is simply not cognizable until the challenged confinement has been remedied by some other process. *Id.* at 487.

In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended the application of *Heck* to prison disciplinary proceedings. If the inmate's allegations would "necessarily imply the invalidity of the punishment imposed" the claim is not cognizable in a civil action under § 1983. *Id.* at 648. Furthermore, in *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Supreme Court reemphasized that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81-82.

In the instant action, success on Plaintiff's claims concerning his prison disciplinary conviction resulting in loss of good time would necessarily imply the invalidity of his confinement and therefore cannot be brought under § 1983.

13

For all the foregoing reasons, Plaintiff's due process claims concerning his prison disciplinary proceedings will be dismissed for failure to state a claim.

### b. *Grievance denials and rejections*

Plaintiff complains that Defendant Wheeler, the GRCC Grievance Coordinator, denied and rejected his grievances, and that Defendants Beehler, Patterson, Jolly, and Burnett, GRCC Health Care Grievance Committee Members, denied his health care grievances.

However, "[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). A plaintiff's claim is against the subjects of his grievances, not those who merely decided whether to grant or deny the grievances. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Nwaebo v. Hawk-Sawyer,* 83 F. App'x 85, 86 (6th Cir. 2003) (same); *Simpson v. Overton,* 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation."); *Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). Thus, where the only allegation against a defendant relates to the denial of a grievance, a plaintiff fails to state a claim for relief against that defendant.

Similarly, Plaintiff's allegation regarding the rejection of grievances by Defendant Wheeler also fails to state a claim upon which relief may granted. This is because there is "no

constitutionally protected due process interest in unfettered access to a prison grievance procedure." *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005).

For these reasons, Plaintiff's claims against Defendants Wheeler, Beehler, Patterson, Jolly, and Burnett will be dismissed for failure to state a claim upon which relief may be granted.

### c. *Conspiracy*

"A civil conspiracy claim under § 1983 . . . lies where there is 'an agreement between two or more persons to injure another by unlawful action.'" *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). In order to state a claim of civil conspiracy under § 1983, a plaintiff must show that there was a single plan, that the coconspirators shared in the objective of the conspiracy, violating the plaintiff's constitutional rights, and that an overt act was committed in furtherance of the conspiracy. *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). A plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 566 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy"); *Robertson v. Lucas*, 753 F.3d at 622 (indicating that "'[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983' or *Bivens*") (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

The Court finds that Plaintiff's conspiracy claims do not survive initial review as he makes only general allegations of a conspiracy.

### *d. Retaliation*

"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). The plaintiff has the burden of proof regarding all three elements. *See, e.g.*, *Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003); *Green v. Tudor*, 685 F. Supp. 2d 678, 692 (W.D. Mich. 2010). Moreover, the plaintiff must prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). If the plaintiff makes such a showing, the defendants may still avoid liability by showing "that [they] would have taken the same action in the absence of the protected activity." *Whiteside v. Parrish*, 387 F. App'x 608, 612 (6th Cir. 2010) (quoting *Thaddeus-X*, 175 F.3d at 399).

Plaintiff claims that Defendant Mitchell engaged in "falsifing documents in the plaintiff file to Continue punishing him for filing lawsuits against other K.D.O.C. official at Northpoint Training Center." While filing a lawsuit is protected conduct, *see Turner v. Safley*, 482 U.S. 78, 84 (1987); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000), Plaintiff does not indicate any specific lawsuit he filed, allege that Defendant Mitchell knew of the lawsuit, or otherwise causally connect the generally alleged adverse action of falsifying documents to the unspecified Northpoint Training Center litigation. Moreover, it appears that Plaintiff alleges the purported falsification of documents by Defendant Mitchell was when Defendant Mitchell found Plaintiff's

claims of sexual assault unfounded. The Court finds Plaintiff's claims of assault to be frivolous. Indeed, as the Court indicated in its Memorandum and Order denying Plaintiff's request for preliminary injunctive relief:

> [A]lthough the Plaintiff's allegations of fecal and sexual attacks are concerning to the Court, the Court notes that Plaintiff raised similar allegations in a separate action pending in the Western District of Kentucky. *See Miles v. Ky. Dep't of Corr.*, Civil Action No. 5:16-CV-P73-TBR (W.D. Ky.). In that case, the temporary restraining order was denied because Plaintiff had "not provided specific facts showing that immediate or irreparable injury [would] result before Defendants [could] be heard in opposition," and the Warden at KSP was ordered to respond to the preliminary injunction. *Id.* at DN 9. The court later denied the motion for a preliminary injunction. *Id.* at DN 23. In denying the motion, the court noted that Plaintiff had been making allegations about fecal attacks since August 2014, and that Plaintiff had been transferred to Little Sandy Correctional Complex at some point for a mental health evaluation regarding this matter. "The evaluation stated that Plaintiff was 'functioning normally,' but was delusional." *Id.* at DN 23, p. 5. The court noted that Plaintiff was subsequently sent for another mental health evaluation while at KSP. "Following this evaluation on January 20, 2016, the psychologist concluded that [Plaintiff] was 'delusional' and 'fixated on the fact that others are placing feces in his mouth while he sleeps.'" *Id.* Another mental health evaluation on March 9, 2016, also found that Plaintiff was "delusional." *Id.* at DN 23, p. 6. The court found that the allegations regarding the fecal attacks seem "'irrational' and 'wholly incredible.'" *Id.* at DN 23, p. 7. The court also found the allegations regarding the sexual attacks were "closely related to [Plaintiff's] 'fantastical' allegations regarding the 'fecal attacks.'" *Id.* at DN 23, p. 9. The court also noted that on May 7, 2015, Plaintiff had filed a complaint in the Eastern District of Kentucky, *Miles v. Bottom*, Civil Action No. 5:15-126-JMH (E.D. Ky.), alleging that "other men were placing feces in his mouth while he slept at Northpoint Training Center."[5]

Further on initial review of Plaintiff's complaint in Civil Action 5:16CV-P73-TBR, wherein he raised a similar retaliation claim, the Court found "Plaintiff's allegations regarding

---

[5] To the extent that this is the lawsuit against Northpoint Training Center officers that Plaintiff alleges he was retaliated against for filing, he still shows no causal connect to the filing of the lawsuit and Defendant Mitchell's alleged wrongdoing a year later, and this does not change the Court's finding that Plaintiff's claim regarding the sexual attacks are frivolous/incredible.

17

these attacks to be too 'wholly incredible' to actually state a claim upon which relief may be granted. Therefore, his retaliation claim based on allegations of fecal and sexual attacks will be dismissed" (DN 25).

For these reasons, the Court finds that Plaintiff has failed to state a retaliation claim, and that claim will be dismissed.

### *e. Dr. Younger*

To satisfy the objective component of an Eighth Amendment deliberate indifference claim, Plaintiff must show the existence of a sufficiently serious medical need, meaning that he is "incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004)). The subjective component of the Eighth Amendment standard is met "where a plaintiff demonstrates that prison officials acted with 'deliberate indifference' to a serious medical need," which "is the equivalent of 'recklessly disregarding that risk.'" *McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008) (quoting *Farmer*, 511 U.S. at 836). In other words, "[s]atisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the defendant prison official acted with a sufficiently culpable state of mind.'" *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (quoting *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)). "A plaintiff alleging deliberate indifference must show more than negligence or misdiagnosis of an ailment." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). A plaintiff must also show that his claim

involves more than a difference of opinion between the plaintiff and a doctor regarding the plaintiff's diagnosis and treatment. *Westlake v. Lucas*, 537 F.2d at 860, n.5.

Medical records that Plaintiff attached to his complaint reveal that he received treatment while at GRCC. University of Kentucky Medical Center records dated March 13, 2017, indicate that he underwent an upper GI endoscopy for surveillance for malignancy due to personal history of Barrett's esophagus; that esophageal mucosal changes were biopsied; and that he was instructed to repeat the procedure in 3-5 years if no dysplasia on biopsies.[6] Other records reveal that he had a sleep study performed on March 15, 2017, and was diagnosed with snoring. Shortly thereafter, in 2017, he requested a second opinion regarding the sleep study. On May 2, 2017, Plaintiff submitted a health care request complaining of itching of and discharge from his rectum, and as a result, he was referred to Dr. Younger on May 3, 2017. At that visit, Plaintiff complained of "'discharge/itching in my rectum and people putting stuff in my mouth while I'm sleeping/snoring. They are doing sexual things to me and taking advantage of me while I'm asleep.'" Dr. Younger diagnosed Plaintiff with unspecified dysphagia and "Other specified diseases of anus and rectum"; referred him to "psych to consider DSM Dx"; and prescribed medication, ordered labs, and instructed him to use hydrocortisone from the canteen. University of Louisville Hospital records dated October 5, 2017, reveal that Plaintiff was seen for an alleged sexual assault and given medication and post-exposure prophylaxis.

While Plaintiff may have desired a second opinion or to be seen by an ENT specialist, in the context of Eighth Amendment deliberate-indifference claims, the Sixth Circuit has observed:

---

[6] While Plaintiff did not attach the results of the biopsy to his complaint, Defendants in Civil Action No. 5:16CV-P73-TBR attached a copy of the surgical pathology report to their motion for summary judgment, and that report showed no dysplasia. *See* DNs 97 & 98.

> [W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner alleges only that the medical care he received was inadequate, federal courts are generally reluctant to second guess medical judgments. However, it is possible for medical treatment to be so woefully inadequate as to amount to no treatment at all.

*Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (internal quotations marks and citation omitted). In this case, Plaintiff received treatment, albeit not all the treatment he desired, and the Court does not wish to second guess his doctor's medical judgments. *See Colvin v. Burns*, No. 2:08-CV-276, 2010 WL 1963289, at *2 (E.D. Tenn. May 13, 2010) ("As long as the treatment actually afforded an inmate squares with constitutional standards, he has no right to demand second opinions, a certain physician, or a particular treatment."). Finally, having been transferred from GRCC, Plaintiff is no longer subject to the conditions about which he complains.

The Court, therefore, concludes that Plaintiff has failed to state an Eighth Amendment claim of deliberate indifference to his serious medical needs and will dismiss this claim.

For all the foregoing reasons, the Court will dismiss this action by separate Order.

Date: November 9, 2018

**Charles R. Simpson III, Senior Judge**
**United States District Court**

cc: Plaintiff, *pro se*
     Defendants
     General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4411.005